**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Red Door Sandwich, LLC, | ) | Case No. 25- |
| | ) | |
| Debtor. | ) | |

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS**

TO:  ALL CREDITORS AND PARTIES IN INTEREST

Red Door Sandwich, LLC (hereinafter referred to as the "Debtor"), hereby moves this Court pursuant to 11 U.S.C. §§ 105(a), 361, 363(c)(2) and (e) and Fed R. Bankr. P. 4001(b) and 9014 for an Order authorizing the Debtor to use cash collateral and granting replacement liens. The Debtor has also requested an expedited hearing on this Motion. Debtor would also request that if no party objects or if the Debtor is able to resolve the issues surrounding the use of cash collateral with any objecting creditor prior to the final hearing, that no final hearing be held on the Motion.

The Debtor proposes to use the funds generated from the operation of its business for ongoing operating expenses, which is absolutely necessary for the continuation of Debtor's business. In support of this Motion, Debtor would show as follows:

**JURISDICTION AND PROCEDURAL HISTORY**

1. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and Local Civil Rule 83.IX.01, D.S.C. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1).

2. Venue of these proceedings and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 361, 363(c), 503, and 507; Fed. R. Bankr. P. 2002, 4001, and 9014; and SCLBR 4001-4.

4. On the same day hereof, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor is operating its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtor is wholly owned by its parent company, Red Door Brands, LLC ("Parent Company"). The following other wholly owned subsidiaries of the Parent Company are filing their own Chapter 11 petitions contemporaneously herewith: Maverick Restaurant Group, LLC, Red Door Pizza, LLC, and Matadoor Restaurant Group, LLC (together, the "Sister Subsidiaries"). The Debtor intends to move to have the cases jointly administered. The Debtor does not anticipate seeking an order to have the cases substantively consolidated. The finances of each company will remain separate and distinct.

## BACKGROUND AND STATEMENT OF FACTS

6. Debtor was organized in the State of Florida, and has its principal place of business in Greenville, South Carolina.

7. The Debtor operates 4 McAlister's Deli restaurants, with locations in Georgia, and has approximately 82 employees. The Debtor is owned 100% by Parent Company, which in turn is owned 100% by Argus Wiley.

8. One of the Sister Subsidiaries (Matadoor Restaurant Group) began to experience financial difficulties in the latter part of 2024 due to company growth, an unexpected decline in sales, and rising operational costs. With the advice of brokers, Matadoor took out multiple MCA loans as a bridge while it analyzed its cash flow issues. A decision was made to close two of the restaurants that were not performing well. The company took out additional MCA loans on the advice of its brokers as a further bridge in the interim. Unfortunately, the MCA loans put Matadoor into further financial distress due to the excessive fees, excessive effective interest rate, and aggressive payback schedules. Despite its efforts to reduce expenses, Matadoor's revenue has not been able to keep up with the MCA obligations, and the Debtor's cash flow is not able to make up the difference.

9. Matadoor has a total of ten (10) MCA loans, involving nine (9) different creditors, as follows (the "MCA Creditors"), ordered from oldest to newest:[1]

    a. Apex Funding Silver LLC (owed approximately $480,000)

    b. Apex Funding Silver LLC (owed approximately $450,000)

    c. Funderzgroup LLC dba Link Advance 2.0 (owed approximately $535,000)

    d. Parkview Advance (owed approximately $275,000)

---

[1] This is for information only. Debtor does concede the validity of the debt or amount, or the secured nature of any debt. Debtor reserves all rights and defenses.

    e.   Galt Funding Co. (owed approximately $210,000)

    f.   Mynt Advance (owed approximately $210,000)

    g.   Union Funding Source, Inc. (owed approximately $190,000)

    h.   Stellar Capital LLC (owed approximately $123,000)

    i.   Elite Funding (owed approximately $123,000)

    j.   Velocity Capital Group LLC (owed approximately $105,000)

10. The Debtor is either an additional obligor or a guarantor as to most or all of the MCA Creditors.

11. Upon information and belief, most or all of the MCA Creditors assert an interest in "future sales" and/or the Debtor's accounts receivable.

12. Some of the MCA Creditors have filed a UCC against the Debtor in Florida. One or more UCCs have been filed against the Debtor in South Carolina. However, UCCs filed in South Carolina do not perfect a lien against the Debtor which was incorporated in Florida.

13. For purposes of this Motion, any creditor asserting a lien or interest in Cash Collateral is included in the term "Secured Creditors," to include all MCA Creditors.

14. Recently, a "lien hold" was placed on some of the Debtor's accounts, detrimentally affecting the Debtor's ability to operate. This Chapter 11 filing was necessary in order to stop the collection efforts of the Debtor's creditors, allowing the Debtor to reorganize. The Sister Subsidiaries are also named as direct obligors or guarantors as to the MCA Creditors, necessitating the Chapter 11 filings of those entities.

## RELIEF REQUESTED

The Debtor seeks authority to use cash collateral (as defined in 11 U.S.C. § 363(a)), and seeks to provide replacement liens to those secured creditors holding valid liens. The Debtor is continually receiving income from the operation of its business at the point-of-sale, and cash collateral is continually being replenished. Therefore, the Debtor believes that granting replacement liens to the Secured Creditors will fully protect these creditors. The Debtor cannot operate its business without the ability to use Cash Collateral to pay vital operating expenses. Further, the Debtor will suffer immediate and irreparable harm if the relief requested herein is not granted.

The Debtor's use of Cash Collateral in this case is essential for the continued operation of the Debtor's business. The Debtor's business depends on employee payroll and other employee

expenses, replenishment of inventory and food/beverage items, maintenance of its restaurant locations, and other necessary operational expenses. To continue operating its business, the Debtor must continue paying its payroll, operating expenses, utilities, and other essential items as listed in the budget attached hereto as **Exhibit A** (the "Budget"). Absent the use of Cash Collateral, Debtor's business must close, which would mean the loss of jobs to approximately 82 employees and the inability of the company to generate revenue to pay its creditors.

The Debtor requests authorization from the Court to use Cash Collateral in accordance with the Budget, in the ordinary course of its business. The Budget shows estimated revenue and expenses by "Period" which is equal to four (4) weeks. Debtor requests permission to exceed line items in the Budget provided such variance is within 10% of the "Percent of Total Income" breakdown as shown on the Budget. The Debtor also seeks authority to carry over "unused" budgeted amounts to the subsequent Periods as may be necessary for the smooth operations of the company. For example, if revenue is low one Period, the Debtor might hold payment of the Management Fee to a subsequent Period. The Debtor has included a line item for "Reserves" which is meant to cover unanticipated operating expenses and is also meant to provide a cushion for fluctuating revenue.

Any line item for "Legal Fees" or "Accounting Fees" in the Budget will be paid into the professional's trust account, but those amounts will not be applied to the professional fees unless and until further authorized by the Court.

The Budget includes payment of a Management Fee to the Parent Company, which is an insider. No other insiders are paid from the Budget. The Management Fee is typically 5% of Total Income, but has been reduced to approximately 2% of the Total Income for purposes of this Budget. The Management Fee is used for the salaries of District-Level Managers, salaries of the Comptroller and other administrative employees, and for other administrative costs necessary to run the restaurants, including general office expenses. Each of the Sister Subsidiaries likewise pays a percentage of Total Income as a Management Fee, and the Parent Company in turn provides the overall management services. Argus Wiley, the 100% owner of the Parent Company, receives compensation from the Parent Company. Although the Parent Company pays the salaries of the District-Level Managers/Officers, the Debtor pays their travel and meeting expenses for site visits, which is shown as a separate line-item on the Budget.

Under 11 U.S.C. § 363(c)(2), Debtor "may not use, sell, or lease cash collateral ... unless (A)

each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." Notwithstanding the objection of a party with an interest in the cash collateral, pursuant to § 363(e), the Court may authorize the use of cash collateral if such creditor is provided with adequate protection for its interest in the collateral. Among the non-exclusive examples of adequate protection found in Section 361 is a replacement lien to the extent that use of collateral results in a decrease in its value. When the secured creditor's interest in the collateral is adequately protected, the policy and provisions of the Bankruptcy Code mandate the authorization for use of the collateral. *See Metropolitan Life Insurance Co. v. Sunnymead Shopping Center Co. (In re Sunnymead Shopping Center Co.)*, 178 B.R. 809 (Bankr. App. Panel 9th Cir. 1995); *MB Bank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393 (10th Cir. 1987); *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler Plymouth, Inc.)*, 727 F.2d 1017 (11th Cir. 1984); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995), *aff'd* in unpublished opinion, 117 F.3d 1413, (4th Cir. 1997) (citing *In re O'Connor*, 808 F.2d at 1396-97); *see also In re Podzemny*, 2011 WL 5766591 at *4 (Bankr. D.N.M. February 8, 2011).

Debtor's use of Cash Collateral is necessary in order to allow a successful Chapter 11 reorganization, based upon the continuing operation of Debtor's business. This will benefit all parties, including the Secured Creditors which will receive replacement liens. Specifically, to adequately protect the Secured Creditors, Debtor requests that the Secured Creditors be granted replacement liens to the extent their liens are determined to be valid, to the same extent, validity, and priority as their pre-petition liens, for any post-petition diminution in the pre-petition collateral.

The relief is requested on an interim basis until a final hearing on the Motion is heard before this Court with appropriate notice to parties in interest, or as may be ordered by the Court.

WHEREFORE, having shown that the Debtor's use of Cash Collateral for its continuing operations is vital, Debtor seeks interim and final orders authorizing use of such Cash Collateral and requests such other and further relief as the Court may deem just and proper.

Respectfully Submitted,
BARTON BRIMM, PA

/s/ Christine E. Brimm
Christine E. Brimm, #6313
P.O. Box 14805

Myrtle Beach, SC  29587
Telephone:  (803) 256-6582
cbrimm@bartonbrimm.com
Attorney for Debtor

| RED DOOR SANDWICH | Period 1 | Period 2 | Period 3 | Period 4 | Period 5 | Period 6 | Total | |
|---|---:|---:|---:|---:|---:|---:|---:|---:|
| **Income** | | | | | | | | |
| Total Income | 465,000 | 465,000 | 465,000 | 465,000 | 465,000 | 465,000 | 2,790,000 | |
| Total COGS | 134,850 | 134,850 | 134,850 | 134,850 | 134,850 | 134,850 | 809,100 | 29.00% |
| **Gross Profit** | 330,150 | 330,150 | 330,150 | 330,150 | 330,150 | 330,150 | 1,980,900 | 71.00% |
| **Expense** | | | | | | | | |
| Total Refunds, Over/Short | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 33,000 | |
| **Store Level Payroll** | 83,700 | 83,700 | 83,700 | 83,700 | 83,700 | 83,700 | 502,200 | |
| Total Payroll w/Managers & Taxes & Benefits | 120,900 | 120,900 | 120,900 | 120,900 | 120,900 | 120,900 | 725,400 | 26.00% |
| Total Controllables (Smallwares and equipment) | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 | |
| Total Advertising & Promotion | 20,925 | 20,925 | 20,925 | 20,925 | 20,925 | 20,925 | 125,550 | 4.50% |
| Total Royalty | 23,250 | 23,250 | 23,250 | 23,250 | 23,250 | 23,250 | 139,500 | 5.00% |
| Total Repairs & Maintenance | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 | 0.43% |
| Total Utilities & Facility Costs | 23,250 | 23,250 | 23,250 | 23,250 | 23,250 | 23,250 | 139,500 | 5.00% |
| Total Insurance | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 21,000 | 0.75% |
| Total Rent | 51,150 | 51,150 | 51,150 | 51,150 | 51,150 | 51,150 | 306,900 | 11.00% |
| Total Travel & Meetings | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 15,000 | 0.54% |
| Total Credit Card, 3rd Party & Bank Fees | 32,550 | 32,550 | 32,550 | 32,550 | 32,550 | 32,550 | 195,300 | 7.00% |
| Total Accounting Services | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 | 0.22% |
| Total Licenses, Tax & Permits | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 | 0.22% |
| Total Office Expenses | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 | 0.22% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Reserves | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 | |
| US Trustee | 0 | 0 | 5,136 | 0 | 0 | 5,136 | 10,272 | |
| Bankruptcy Counsel | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 | |
| **Total Expenses** | **425,875** | **425,875** | **431,011** | **425,875** | **425,875** | **431,011** | **2,565,522** | 91.95% |
| **Net Ordinary Income** | **39,125** | **39,125** | **33,989** | **39,125** | **39,125** | **33,989** | **224,478** | 8.05% |
| Other Income/Expense | | | | | | | | |
| 9100 - Management Fee (G&A) | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 54,000 | 1.94% |
| **Total Other Expense** | **9,000** | **9,000** | **9,000** | **9,000** | **9,000** | **9,000** | **54,000** | |
| **Net Income** | **30,125** | **30,125** | **24,989** | **30,125** | **30,125** | **24,989** | **170,478** | 6.11% |